FRANKLIN v. HAYNES, *Appellant.*

Division One, February 5, 1894.

1. **Ejectment:** EVIDENCE: JUDGMENT. It is error to render judgment for plaintiff in ejectment where his evidence locates the land in controversy outside of any land in defendant's possession.

2. ———: RENTS AND PROFITS: DAMAGES: JUDGMENT: REMITTITUR. Judgment for damages and rents and profits in an action of ejectment should not be given, where there is no evidence on the subject, though such error could be corrected by a remittitur in the appellate court, where the case was otherwise properly tried.

3. ———: JUDGMENT: DESCRIPTION OF PREMISES. Judgment for possession, in ejectment, where division lines are in dispute, should describe the land adjudged with sufficient certainty to enable the executive officer of the court to correctly and intelligently execute a writ of possession.

*Appeal from Maries Circuit Court.* — HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

*W. S. Pope* and *Joseph Mosby* for appellant.

(1) No evidence was ever introduced by the plaintiff showing a survey of the land sued for, or its location. The evidence is that defendant is not in possession of plaintiff's land. (2) According to the evidence of the surveyor, Williams, his survey could not have been correct, nor could he by such a survey locate the land of plaintiff, or of defendant, or properly locate anything. (3) According to the evidence the only survey ever made of plaintiff's land, was made by Terrell when county surveyor at the request of plaintiff's ancestor; and according to his testimony no part of the lands owned by the plaintiff is in the possession of, or claimed by, the defendant. (4) The judgment awards the plaintiff substantial damage, and assesses the value of monthly rents and profits when there was not a syllable of testimony given as to either. R. S. 1889, chap. 156, secs. 8325, *et sequitur*, especially sec. 8331. Tiffin's instructions, under which lands in Missouri were surveyed to be found in Higgins' subdivisions of the public lands, illustrated part first commencing at page 71, and especially paragraph 4. Lester's Land Laws and Regulations, p. 721, *et seq.*; *Knight v. Elliott,* 57 Mo. 317; *Frazier v. Bryant,* 59 Mo. 121, and authorities therein cited.

*W. M. Barr* and *J. R. Edwards* for respondent.

(1) The patent offered in evidence shows title to plaintiff for the north fractional half section 30, town-

ship 41, range 8 west, which stands admitted. It was shown that as much as thirty-five or forty acres of this land was in defendant's field. The other evidence of plaintiff corroborates this witness. It stands admitted that defendant had no land in the north half of this section; plaintiff shows title from the government and these facts entitle the plaintiff to judgment for possession. (2) The record fails to show the filing of any bill of exceptions in the case, but should the court consider the case as if the bill of exceptions had been filed then the point made by appellant that there was no proof of damage and rents and profits, would not affect the real issue in the case. This court can, if it sees proper, correct the judgment in relation to the damages and rents or require plaintiff to remit. It is no cause for reversing the judgment otherwise correct. (3) The patent from the United States under the pleadings in this case entitled the plaintiff to judgment on showing possession in defendant. *Birch v. Gillis*, 67 Mo. 102. The title was in the United States until the issuing of patent to plaintiff in 1882, and defendant acquired no rights under any possession prior or subsequent to that time.

MACFARLANE, J.—The action was ejectment to recover the north fractional half (left bank of the Gasconade river) of section 30, township 41, range 8, in Maries county. The answer was a general denial.

It appears from the government plat, offered in evidence, that the Gasconade river flows through the north half of section 30, leaving about twenty acres of the northeast quarter on the south side. Plaintiff had a patent from the United States dated in 1882, describing the land as in the petition and naming the quantity as twenty and ninety-one hundredths acres. Defendant, it was agreed, had title from the govern-

ment to the southeast quarter of the section, which appeared from the plat to contain one hundred and sixty acres. The dispute is as to the true line between these tracts.

It appeared from the evidence that the land claimed by the defendant, as comprising the southeast quarter of the section, had been inclosed since 1852, and thus occupied by himself and his grantors. Plaintiff claimed that the north fence of defendant's inclosure was so far north of the line between the quarter sections as to include thirty-five or forty acres of the fractional northeast quarter.

The surveyor of the county was called by plaintiff as a witness, to establish his claim. He testified in substance that he first measured off to defendant one hundred and sixty acres as the southeast quarter, and gave what remained between that and the river to the defendant; that the line between the two tracts thus ascertained was inside defendant's field; that as much as thirty-five or forty acres of plaintiff's land is in defendant's field.

In detailing how this result was reached he stated that he found the government corners at the southeast and southwest corners of the section; that he ran a line north from the southeast corner of section 30, on the east side, eighty chains to a point; and from the southwest corner of the southeast quarter of section 30 he measured north eighty chains, on the west line of the quarter section to a point, and the line between the points he established as the true line between the southeast and the northeast quarters of the section. He also testified that there were twenty-nine chains between that line and the river.

At the close of all the evidence defendant requested the court (sitting as a jury) in substance, to declare the law to be that the true method was not used by the

surveyor in ascertaining the line in dispute. This was substantially the evidence for plaintiff in chief. Defendant demurred to the evidence, which was overruled. Defendant then offered some evidence tending to prove the issues on his part.

After defendant had closed, plaintiff introduced the surveyor of Osage county for the purpose of proving that he had recently surveyed the land and ascertained the location of the line. Defendant objected on the ground that the evidence was not in rebuttal, but should have been offered in chief. The objection was overruled. The testimony of this witness fixed substantially the same line as was established by the surveyor of Maries county, but he did it by running half a mile, instead of eighty chains (one mile), from the south line of the section. No witness definitely located the line.

No evidence was given of damages, rents or profits. No declarations of law were asked by the plaintiff, or given by the court. The court, sitting as a jury, found for the plaintiff, and assessed his damage at $25, and the monthly value of the rents and profits at three dollars, and entered judgment for the possession of the land, "to wit: The north fractional half (left bank Gasconade river) of section 30, township 41, range 8 west," and for damages, rents and profits.

I. From a mere reading of the foregoing statement it is manifest that the judgment should not stand. The manner of finding the dividing line between the southeast quarter of the section, which was adopted by the surveyor of the county, if taken, as shown by the record, would place the line a mile north of the south line of the section. He testifies that he commenced at the southeast corner of section 30 and ran north on the east line of the section eighty chains, and the same distance on the west line which gave to the

southeast quarter one hundred and sixty acres, and there still remained twenty-nine chains between the point reached and the south bank of the river. This result was manifestly absurd. The distance run would locate the line north of the north line of the section. The witness doubtless inadvertently stated the distance run at eighty instead of forty chains, but he repeated the statement without correction after the government plat and field notes were shown him, and we must take the record as we find it.

In addition to this manifest error of the witness, the court refused to declare, as a matter of law, when requested by defendant's counsel, that the measurements made by the surveyor would not result in finding the true dividing line. As no declarations of law were given, we must assume, from the fact that the one asked by the defendant was refused, that the court based its decision on the testimony of this witness. This evidence did not authorize a judgment for the possession of any land held by defendant.

II. The error in rendering judgment for damages and monthly rents and profits, when there was no evidence on the subject, could be corrected here by a remittitur, which plaintiffs offer to allow, were there no other errors requiring a reversal of the judgment.

III. The judgment was for the recovery of the "north fractional half (left bank of the Gasconade river) of section 30, township 41, range 8 west." Defendant admitted on the trial that plaintiff was the owner of the land as described. The evidence showed, without conflict, that defendant was not in possession of at least a portion of this land. The issue in the case was, what portion of the land, if any, was in defendant's possession. It seems to me that the judgment settles nothing, but leaves the rights of the parties where the pleadings and admissions left them.

The issue is left to the determination of the sheriff when he undertakes to execute the writ. How could the sheriff know from a writ which follows the description contained in the judgment, where the line between these proprietors lay. The parties disagree, the witnesses differ, and the court does not decide.

The judgment for possession, where division lines are in dispute, should describe the land adjudged with sufficient certainty to enable the executive officer of the court to correctly and intelligently execute a writ of possession.

Judgment reversed and cause remanded for a new trial. All concur.